UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA LEE POOLE,<br><br>           Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>           Defendant. | No.  2:15-cv-00851-MCE-KJN<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]  Plaintiff filed a motion for summary judgment, which defendant opposed while simultaneously filing a cross-motion for summary judgment.  (ECF Nos. 14, 15.)  No reply brief was filed by plaintiff.

For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

////

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15).

1

I.   BACKGROUND

Plaintiff was born on February 1, 1964; she has a high school education; her previous occupation was a certified court reporter; and she last worked on August 13, 2004.[2] (Administrative Transcript ("AT") 49-50, 203.) Plaintiff applied for DIB on October 11, 2011, alleging that her disability began on August 13, 2004, and that she was disabled due to cervical disc disorder, migraines, and bursitis in her hips.[3] (AT 203, 234.) After plaintiff's application was denied initially and upon reconsideration, she requested a hearing before an administrative law judge ("ALJ"), which took place on July 23, 2013. (AT 47, 136-48, 149.) In a decision dated September 3, 2013, the ALJ found plaintiff not disabled. (AT 15-32.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on February 18, 2015. (AT 1-6.) Thereafter, plaintiff filed this action in federal district court on April 21, 2015, to obtain judicial review of the Commissioner's final decision. (ECF No. 2.)

II.   ISSUES PRESENTED

Plaintiff raises the following issues: (1) whether the ALJ improperly assessed plaintiff's residual functional capacity ("RFC") by improperly weighing the medical opinion evidence in the record; (2) whether the ALJ relied upon inadequate testimony from the vocational expert; and (3) whether the ALJ improperly discounted plaintiff's testimony regarding the intensity, persistence, and limited effects of her symptoms.

////

////

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] To be eligible for DIB, plaintiff has to prove disability prior to March 31, 2008, the date she was last insured. (AT 216.) See 42 U.S.C. § 423(c); 20 C.F.R. § 404.1520; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

   A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to disability benefits pursuant to the Commissioner's standard five-step analytical framework.[4] At the first step, the ALJ concluded

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401, et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382, et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

3

that plaintiff had not engaged in substantial gainful activity between August 13, 2004, the alleged onset date, and March 31, 2008, the date last insured. (AT 20.) At step two, the ALJ determined that plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine with radiculopathy, migraines, and chronic pain." (Id.) However, at step three, the ALJ determined that the plaintiff did not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can lift and carry ten pounds both occasionally and frequently, can sit, stand and/or walk for six hours in an eight-hour day, can occasionally climb, can frequently balance, can occasionally stoop, kneel, crouch and/or crawl. She can frequently, (but not constantly or repetitively), reach, handle, finger, and feel with the bilateral upper extremities.

(AT 21.)

At step four, the ALJ found that plaintiff was unable to perform any past relevant work through the date last insured. (AT 24.) However, at step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed through the date last insured. (Id.)

Accordingly, the ALJ concluded that the plaintiff had not been under a disability from August 13, 2014, the alleged onset date, through March 31, 2008, the date last insured. (AT 28.)

---

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

B.      Plaintiff's Substantive Challenges to the Commissioner's Determinations

   1. *Whether the ALJ Improperly Assessed the Medical Opinion Evidence When Determining Plaintiff's RFC*

First, plaintiff argues that the ALJ erred in considering and weighing the medical opinions of Dr. Duffy, Dr. Kimble, Dr. Champlin, Dr. Jaojoco, and Nurse Practitioner Mullen.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ property rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

### a. Dr. Duffy and Dr. Kimble

Plaintiff argues that the ALJ erred by failing to properly incorporate into his RFC determination or otherwise reconcile the limitations opined by Dr. Duffy and Dr. Kimble despite giving those physicians' opinions significant and considerable weight, respectively.  For the reasons discussed below, the undersigned finds no error in the ALJ's consideration of Dr. Duffy's and Dr. Kimble's opinions.

After completing an MRI scan of plaintiff on September 9, 2003, which found plaintiff had "reversed lordosis and mild annular bulges at C4-5, C5-6, and C6-7," Dr. Duffy completed an attending physician's statement ("APS") dated October 28, 2003.  (AT 305-09.)  Dr. Duffy indicated that the current and planned treatment would be conservative, and restricted plaintiff from performing repetitive motions in the neck and upper extremities and prolonged reading, noting that plaintiff's headaches made work and concentration difficult.  (AT 305-06.)  Dr. Duffy opined that plaintiff could not work in another occupation due to her pain and headaches.  (AT 306.)  On June 11, 2004, Dr. Duffy opined that plaintiff could work part-time.  (AT 300.)  In a second APS dated December 7, 2004, Dr. Duffy found that plaintiff could not perform her work as a court reporter as of August 1, 2004, basing his determination on plaintiff's "inability to transcribe" as a result of her impairments.  (AT 298-99.)  He opined further that plaintiff would continue to be unable to work until March 1, 2005.  (AT 298.)  The ALJ assigned "significant weight" to Dr. Duffy's opinion because it was "based upon a significant treatment history."  (AT 22.)

Dr. Kimble completed an APS on January 18, 2007, opining that plaintiff would be restricted to no repetitive use of her upper extremities, no sustained neck flexion, and no lifting of more than 10 pounds.  (AT 414.)  Dr. Kimble opined that these restrictions would likely last plaintiff's lifetime.  (Id.)   The ALJ gave this opinion considerable weight, noting, "Dr. Kimble's opinion is persuasive because it is consistent with the record as a whole."  (AT 22.)

////

Plaintiff argues that the limitations opined by Dr. Duffy and Dr. Kimble were not adequately incorporated into the RFC. The Ninth Circuit Court of Appeals has noted that an ALJ may synthesize and translate assessed limitations into an RFC assessment without repeating each functional limitation verbatim in the RFC assessment. <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1173-74 (9th Cir. 2008); <u>see also</u> 20 C.F.R. § 404.1545 (defining RFC as "the most you can still do despite your limitations"). In this case, the plaintiff's assessed RFC adequately captures the moderate functional limitations assessed by Dr. Duffy and Dr. Kimble. As discussed above, the ALJ found that plaintiff could perform light work with certain limitations, including only being able to lift and carry ten pounds, and frequently, though not constantly or repetitively, being able to reach, handle, finger, and feel with the upper extremities. (AT 21.) The RFC adequately incorporates Dr. Duffy's opinion that plaintiff cannot perform repetitive motions in the neck and upper extremities and Dr. Kimble's opinion that plaintiff cannot repetitively use the upper extremities, should have no sustained neck flexion, and no lifting of more than 10 pounds. (AT 305-06, 414.) Thus, the undersigned finds no error in the ALJ's consideration of these physicians' opinions.

Furthermore, insofar as Dr. Duffy's notes contain cursory conclusions that plaintiff cannot perform work as a court reporter or any other occupation, those are opinions on issues reserved for the Commissioner. (AT 306, 415.) <u>See</u> 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); <u>Allen v. Comm'r of Soc. Sec.</u>, 498 Fed. App'x 696, 696 (9th Cir. 2012) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1)-(2)) ("A treating physician's opinion on the availability of jobs and whether a claimant is disabled are opinions on issues reserved to the Commissioner."). "A treating source's opinion on issues reserved to the Commissioner can never be entitled to controlling weight or given special significance." <u>Allen</u>, 498 Fed. App'x at 696 (citing SSR 96-5p, 1996 WL 374183, at *5). Therefore, the ALJ was not required to incorporate this aspect of Dr. Duffy's opinions into his RFC findings and did not err in not doing so.

////

////

b. <u>Dr. Champlin and Dr. Jaojoco</u>

Plaintiff argues that the ALJ erred by failing to address the medical findings and opinions in the record provided by Dr. Champlin and Dr. Jaojoco. For the reasons discussed below, the undersigned finds that the ALJ did not commit prejudicial error by not explicitly discussing and assigning weight to the medical records produced by Dr. Champlin and Dr. Jaojoco.

Dr. Champlin completed an APS on at least four different occasions. (AT 313-15, 318-20, 326-27, 341-42.) In each, Dr. Champlin restricted plaintiff's ability to work for as little as one week to up to three months. (Id.) At no point did he give an opinion on plaintiff's ability to perform certain tasks or endurance to work.

Dr. Jaojoco examined plaintiff on five occasions and filled out an APS. (AT 420-33.) On January 13, 2006, Dr. Jaojoco found plaintiff had the following range of motion: "flexion 40 degrees, extension 40 degrees, lateral rotation and lateral flexion, with normal limits bilaterally … full active range of motion of both upper extremities and the lumbar spine." (AT 430.) She expressed similar findings in her notes for the other examinations. (AT 422-28, 432-33.) Dr. Jaojoco did not in any of her notes comment on plaintiff's ability to perform work-related functions, though she did on several occasions note that plaintiff was well-nourished, well-developed, alert and oriented, and in no acute distress. (AT 422-23, 425, 427, 430.)

As an initial matter, contrary to plaintiff's argument, the record does not contain an opinion from Dr. Jaojoco regarding the functional limitations caused by plaintiff's impairments. Title 20 C.F.R. § 404.1527(c) mandates that the Commissioner consider every medical source opinion by promising claimants that the administration "will evaluate every medical opinion we receive." Id. This regulation defines medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Id. § 404.1527(a)(2). Here, all of Dr. Jaojoco's available medical records consist only of a description of plaintiff's complaints, the objective medical findings Dr. Jaojoco obtained through her examination of plaintiff, and a recommended treatment plan for plaintiff.

8

(AT 420- 33.)  Nowhere does Dr. Jaojoco opine on functional limitations attributable to plaintiff's impairments, or otherwise provide an opinion on the extent of plaintiff's impairments or how they impacted plaintiff's ability to work.  Accordingly, the undersigned finds that the ALJ did not err by not addressing Dr. Jaojoco's findings as medical opinion.

With respect to Dr. Champlin, the ALJ's failure to discuss his opinions amounts to harmless error, and thus does not warrant remand.  See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless").  First, Dr. Champlin opined in each of his opinions only that plaintiff was unable to work, which, as discussed above, is an issue that is reserved for the ALJ to determine.  See 20 C.F.R. § 404.1527(d)(1); Allen, 498 Fed. App'x at 696.  Accordingly, the ALJ was not required to accord any weight to those opinions.  Furthermore, to the extent that Dr. Champlin opined any functional restrictions, he noted that plaintiff was restricted for various periods lasting no more than one week to three months in duration.  Such findings would have been insufficient to establish that plaintiff was disabled within the meaning of the Act due to the short periods for which Dr. Champlin's opinions addressed.  See 20 C.F.R. § 404.1505(a) (requiring disability to "ha[ve] lasted or [to] be expected to last for a continuous period of not less than 12 months" before a claimant is deemed disabled within the meaning of the Act).  Accordingly, to the extent the ALJ erred in not weighing or otherwise addressing Dr. Champlin's opinions, that error was harmless.

In addition, to the extent plaintiff argues that the ALJ failed to consider the treatment notes issued by Dr. Champlin and Dr. Jaojoco more generally when developing plaintiff's RFC, that argument is without merit.  The ALJ made his RFC determination "[a]fter careful consideration of the entire record," which includes the medical records of those two physicians. (AT 21, 31-32.)  Absent any indication that the ALJ purposefully ignored the records provided by these two physicians, it is presumed that he took them into consideration when determining plaintiff's functional limitations.  The ALJ carefully considered the record in its entirety and, even in light of the records by Dr. Champlin and Dr. Jaojoco, rendered an RFC determination

based on substantial evidence.

### c. Dr. Manuselis

Plaintiff argues the ALJ erred in giving little weight to Dr. Manuselis's opinion based on reasoning that Dr. Manuselis did not examine plaintiff until November 2008, seven months after plaintiff's date last insured.

On October 18, 2011, Dr. Manuselis completed a medical source statement and opined the following limitations on plaintiff's physical abilities: can occasionally lift/carry less than 10 pounds; can seldom lift/carry 10 pounds; can never lift/carry 20 pounds or more; can sit, stand or walk for 2 hours in an 8-hour day with periodic alternation between sitting and standing or walking every 30 minutes; can use her feet to operate leg controls frequently; can never elevate her legs; can occasionally push and/or pull and reach; can frequently handle things with her hands; can continually grasp, finger, and feel; can occasionally bend, climb, balance, stoop, kneel, crouch, crawl, extend arms, and squat; and can seldom reach overhead. (AT 659-61.) Dr. Manuselis indicated that the above-described limitations were present since at least July 15, 2004, and cited an x-ray and physical examination in support. (AT 661.) The ALJ gave Dr. Manuselis's opinion "little weight," stating,

> Generally, 20 C.F.R. 404.1527(d) and 416.927(d) indicate that treating source opinions are to be afforded controlling weight. However, these regulations also state that in some instances, such opinions may be given little weight if not well supported. In this case, Dr. Manuselis's opinion is unpersuasive because they [*sic*] claimant did not establish care with the doctor until November 2008, well after the date last insured [citation omitted]. Therefore, as Dr. Manuselis did not examine the claimant during the period at issue, his opinion is obviously less persuasive. Thus, Dr. Manuselis's opinion is given little weight.

(AT 22.)

Generally, medical reports should not be disregarded solely because they are rendered retrospectively, and may be relevant to a prior period of disability. Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988). However, in determining how much weight to give such a retrospective assessment, the court may consider whether the report specifically assessed

10

plaintiff's functional capacity prior to any applicable insurance expiration date; whether the records created during the time period at issue made only limited references to limitations in functional capacity; whether intervening circumstances or events exacerbated the condition; and whether the retrospective opinion conflicted with the same provider's earlier opinion. Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995). Furthermore, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

As the ALJ stated, Dr. Manuselis did not start treating plaintiff until November 2008, roughly seven months after the end of the relevant period, and issued his opinion regarding plaintiff's functional limitations on October 18, 2011, roughly three and a half years after that period. (AT 454, 661.) The ALJ was permitted to rely on these facts in support of his determination that Dr. Manuselis's opinion was entitled to reduced weight with regard to determining plaintiff's RFC. Johnson, 60 F.3d at 1432-33.

Moreover, the ALJ also discounted Dr. Manuselis's opinion, which consisted primarily of a check-the-box form, because it was not well supported. (AT 22.) While Dr. Manuselis acted as plaintiff's treating physician after the relevant period, the opinion was conclusory in nature and was not well supported by the other medical evidence in the record. Meanel, 172 F.3d at 1114 (stating that an ALJ may reject a treating physician's opinion when it is conclusory and minimally supported). Indeed, there existed in the record opinions from other physicians, that were based on clinical findings from the relevant period that contained limitations less severe than those contained in Dr. Manuselis's opinion, which the ALJ found more persuasive, as was his prerogative to determine. (See AT 22); Andrews, 53 F.3d at 1041. In short, the ALJ's reasoning provided specific and legitimate reasons for disregarding Dr. Manuselis's treating opinion that were supported by substantial evidence from the record. Therefore, the ALJ did not error in assigning reduced weight to Dr. Manuselis's opinion.

////

////

d. <u>Nurse Practitioner Mullen</u>

Plaintiff argues the ALJ erred in his consideration of Nurse Practitioner Mullin's opinion that plaintiff was restricted from working as a court reporter or in any other profession for one year. The ALJ gave Nurse Practitioner Mullin's opinion little weight, stating: "Mr. Mullin's opinion is unpersuasive because he is not a physician, and therefore cannot be an acceptable medical source pursuant to 06-3p." (AT 22.)

As an initial matter, the ALJ erred in his reasoning for giving Nurse Practitioner Mullin's opinion little weight because the Code of Federal Regulations clearly includes a nurse practitioner as an acceptable "other medical source" to be used as evidence to show the severity of a claimant's impairments. 20 C.F.R. § 404.1513(d)(1). The ALJ is not permitted to reject an opinion from such a medical source merely because it is not from an "acceptable medical source" as that term is defined in the applicable regulations. Nevertheless, the undersigned finds the error to be harmless because Nurse Practitioner Mullen's opinion gave only a conclusory determination that plaintiff was unable to work without providing any specific clinical findings regarding plaintiff's functional capacity. (AT 406-08.) As discussed above, cursory conclusions that plaintiff cannot work as a court reporter or in any other profession constitute an opinion on issues reserved for the Commissioner. <u>See</u> 20 C.F.R. § 404.1527(d)(1); <u>Allen</u>, 498 Fed. App'x at 696. Thus, this error is harmless and does not warrant remand. <u>See</u> <u>Curry</u>, 925 F.2d at 1129; <u>Molina</u>, 674 F.3d at 1111.

2. *Whether the ALJ Relied Upon Inadequate Testimony from the Vocational Expert*

An ALJ may pose a range of hypothetical questions to a vocational expert, based on alternate interpretations of the evidence. However, the hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC determination, must account for all of the limitations and restrictions of the particular claimant that are supported by substantial evidence in the record as a whole. <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1228 (9th Cir. 2009). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." <u>Id.</u> (citation and quotation marks

1  omitted).  However, the ALJ "is free to accept or reject restrictions in a hypothetical question that
2  are not supported by substantial evidence." Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir.
3  2006).  Furthermore, as the Ninth Circuit has observed, an ALJ may synthesize and translate
4  assessed limitations into an RFC assessment (and subsequently into a hypothetical to the
5  vocational expert) without repeating each functional limitation verbatim in the RFC assessment or
6  hypothetical.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (holding that
7  an ALJ's RFC assessment that a claimant could perform simple tasks adequately captured
8  restrictions related to concentration, persistence, or pace, because the assessment was consistent
9  with the medical evidence).

10     Here, plaintiff argues that the ALJ erred in rendering his step five determination based on
11  the testimony provided by the vocational expert ("VE") because the ALJ's hypotheticals based on
12  plaintiff's RFC determination failed to fully encompass all of plaintiff's limitations supported by
13  the evidence in the record, therefore meaning that the VE's testimony did not constitute
14  substantial evidence.  Specifically, plaintiff contends that the ALJ's hypotheticals based on his
15  RFC determination failed to incorporate a limitation that plaintiff was limited to sitting, standing
16  or walking for 2 hours in an 8-hour workday, occasionally lifting less than 10 pounds, and seldom
17  lifting 10 pounds, as stated in Dr. Manuselis's opinion.  (AT 659-61.)  However, as discussed
18  above, the ALJ properly discounted Dr. Manuselis's opinion.  Accordingly, the ALJ was not
19  required to adopt the limitations opined by that physician that were more extreme than what was
20  included in the ALJ's RFC determination.  See Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir.
21  2006) (quoting Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001)) ("The ALJ . . . 'is
22  free to accept or reject restrictions in a hypothetical question that are not supported by substantial
23  evidence.'").

24     The ALJ posed hypotheticals to the VE that incorporated all of the limitations included in
25  the ALJ's RFC determination, to which the VE responded that there existed several jobs within
26  the national economy that plaintiff could perform.  (AT 25-28.)  The ALJ properly relied on this
27  testimony to support his step five determination that there existed jobs in significant numbers
28  within the national economy that plaintiff could perform given her RFC.  See Bray, 554 F.3d at

1228. Therefore, the ALJ's step five determination that plaintiff was not disabled within the meaning of the Act was proper and supported by substantial evidence.

  3. *Whether the ALJ Improperly Discounted Plaintiff's Testimony Regarding the Intensity, Persistence, and Limiting Effects of her Symptoms*

Finally, plaintiff argues that the ALJ erred by improperly discounting her testimony regarding the extent of the pain and limitations stemming from her impairments without providing clear and convincing reasons supported by substantial evidence for doing so.

In <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

<u>Lingenfelter</u>, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685, 693 (9th Cir. 2009) (quoting <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the

14

symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

Here, to the extent that the ALJ discounted plaintiff's testimony regarding her symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

First, the ALJ noted that the plaintiff's "allegations of physical impairment are not corroborated by the medical records, which revealed generally benign findings." (AT 23.) Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). On multiple occasions during the relevant period, plaintiff was noted as: being well-developed and well-nourished; being in no acute distress; having normal affect; having normal gait; having strength of 5/5 for upper and lower extremities; and having symmetrical reflexes, with no more than mild range of motion issues. (E.g., AT 409-10, 412, 416-17, 419, 423, 425, 427, 430, 437.) This was only one factor the ALJ considered when determining the plaintiff's credibility, which, in light of the ALJ's other clear and convincing reasons discussed below, provided proper support for the ALJ's determination that was backed by substantial evidence in the record.

Second, the ALJ noted that plaintiff's conditions were well controlled by medication and treatment. (AT 23.) A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983). The ALJ noted that the medical record showed that plaintiff's prescribed medications were effective in treating her symptoms, including pain. (AT 23.) On a few occasions, plaintiff noted that her pain was better and the medications were helping. (AT 422-23, 439-40, 444-45.)

15

Moreover, treatment notes showed that plaintiff's injections were successful in alleviating pain and plaintiff showed "good results," which, as the ALJ noted, "suggests that [plaintiff] was not as limited as alleged." (AT 23, 383-87, 404.) Finally, plaintiff underwent physical therapy, which the record shows decreased her headaches, reduced pain in her neck, and increased her range of motion by 25 percent. (AT 23, 434.) Therefore, there existed substantial evidence in the record to support the ALJ's reasoning.

Third, substantial evidence supports the ALJ's finding that plaintiff's daily activities were inconsistent with her allegations of disabling symptoms and limitations. (AT 23.) "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

The ALJ questioned plaintiff on her daily activities during the relevant period, from 2004 to 2008. (AT 88-94.) Plaintiff testified that, between 2004 and 2008, with the help of her daughter, she completed daily household chores and activities, including: changing bed sheets; folding laundry; mopping; cooking; cleaning the bathroom; shopping for groceries; picking vegetables from her garden; potting flowers; and swimming for exercise. (AT 88-93.) She also went camping once between 2004 and 2008. (AT 93.) Treatment records note that plaintiff was also participating in jazzercise, yoga, Pilates, and aerobics for exercise during the relevant period. (AT 454.) Such activities provided substantial support for the ALJ's determination that plaintiff's

daily activities undermined plaintiff's claims of debilitating symptoms.

Plaintiff also testified that, because of her pain, she could no longer complete most of these activities, and her daughter does most of the household work, which indicates that plaintiff may have been more impaired than what her daily activities would suggest on their face. (AT 90-91.) However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one").

For the above reasons, the undersigned finds no error in the ALJ's credibility assessment of plaintiff's testimony regarding the intensity, persistence, and limiting effects of her impairments.

V.    CONCLUSION

In sum, the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) be DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 15) be GRANTED.

3. The Commissioner's final decision be AFFIRMED and judgment be entered for the Commissioner.

4. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the

1 | objections.  The parties are advised that failure to file objections within the specified time may
2 | waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th
3 | Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

    IT IS SO RECOMMENDED.

Dated:  August 2, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE